## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CVS HUTTO LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case Number _____ |
| | ) |
| **DANIEL LOWE,** | ) |
| **LEGACY HUTTO, LLC,** | ) |
| **LEGACY VENTURE WEST II, LLC,** | ) |
| **VENTURE WEST II, LC,** | ) |
| **VENTURE WEST DEVELOPMENT, LLC,** | ) |
| **VENTURE WEST III DEVELOPMENT, L.L.C.** | ) |
| **VENTURE WEST DEVELOPMENT III, LLC,** | ) |
| **RICHARD B. KATZ,** | ) |
| **SANDBERG PHOENIX VON GONTARD, P.C.,** | ) |
| **THE KATZ LAW FIRM, L.C.,** | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

**COMES NOW** plaintiff CVS Hutto LLC ("CVS"), by and through its attorneys, and for

its causes of action against defendants states and alleges as follows:

## Parties

1.      Plaintiff CVS Hutto LLC ("CVS") is a Kansas limited liability company, and has

its principal place of business in the state of Kansas.

2.      Defendant Daniel Lowe ("Lowe") is an individual resident of the state of Kansas.

3.      Defendant Legacy Hutto, LLC ("Legacy Hutto") is a limited liability company,

organized and existing pursuant to the laws of Missouri with its principal business operations in

Missouri.

4.      Defendant Legacy Venture West II, LLC ("LVW") is a purported Missouri limited liability company with its principal place of business in the state of Missouri; however the Missouri Secretary of State has no record of any such entity.

5.      Defendant Venture West II, LC ("VW") is a limited liability company, organized and existing pursuant to the laws of Missouri with its principal place of business in the state of Missouri.   It is CVS's belief that any reference to LVW in the subject transaction detailed herein was meant to be to VW and, as such, for the purposes of this filing, VW shall be used to refer to both VW and LVW as one and the same.

6.      Defendant Venture West Development, L.L.C. ("VWD") is a limited liability company, organized and existing pursuant to the laws of Kansas with its principal business operations in the state of Kansas.

7.      Defendant Venture West III Development, LLC ("VW III") is a purported limited liability company with its principal place of business in the state of Missouri; however the Missouri Secretary of State has no record of any such entity.

8.      Defendant Venture West Development III, LLC ("VWD III") is a limited liability company, organized and existing pursuant to the laws of Kansas with its principal business operations in the state of Kansas.   It is CVS's belief that any reference to VW III in the subject transaction detailed herein was meant to be to VWD III and, as such, for the purposes of this filing, VWD III shall be used to refer to both VW III and VWD III as one and the same.

9.      Defendants Legacy Hutto, LVW, VWD, VWD III are sometimes collectively referred to herein as the "Lowe Entities."

10.     Defendant Richard B. Katz ("Katz") is an individual resident of the state of Kansas.

11.     Defendant Sandberg Phoenix & von Gontard, P.C. ("SPvG") is a professional corporation formed for the practice of law organized and existing pursuant to the laws with its principal place of business in the state of Missouri.

12.     Defendant The Katz Law Firm, L.C. ("KL") is a professional corporation formed for the practice of law organized and existing pursuant to the laws of Kansas with its principal business operations in the state of Kansas.

13.     At all times relevant hereto, Katz was and is an attorney licensed to practice law in the states of Kansas and Missouri, and represented Lowe, the Lowe Entities and his many other companies, specifically including but not limited to the subject transactions with CVS.

14.     During the time that CVS was solicited to make the subject investment, Katz was employed or otherwise associated with SPvG.

15.     At or about April of 2020, Katz left employment with SPvG.   From that time through the present Katz operates his law practice under KL.

## Jurisdiction and Venue

16.     Jurisdiction exists in this Court in that this case arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. §1331.   This case alleges non-frivolous, material federal questions that give rise to subject matter jurisdiction.   "When it comes to invoking federal question jurisdiction, the bar is low. The district court generally has jurisdiction over a claim "arising under" federal law."   *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 681 (7th Cir. 2014)(citing to 28 U.S.C. § 1331; *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 163 (1997)).   The federal laws under which the main claim in this case arises are a direct and essential element of CVS's claim for relief.   *See Steel Co. v. Citizens for*

*Better Env't*, 523 U.S. 83, 89 (1998); *Phillips Petroleum Co. v. Texaco Inc.*, 415 U.S. 125, 127 (1974).

17.     Personal jurisdiction over defendants exist in this Court in that defendants (i) transacted business within the state of Kansas; (ii) entered into an express or implied contract, by mail or otherwise, with a resident of the state of Kansas to be performed in whole or in part by either party in such state; and (iii) commission of a tortious act within the state of Kansas.

18.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (c) in that CVS resides in this judicial district, and its claims against defendants arose in this judicial district.

**Solicitation of and Sale of Securities to CVS**

19.     Commencing in or about September of 2019, Lowe began soliciting one of the members of CVS (which was not yet formed at that time) for a real estate development to be built in Hutto, Texas which would come to be known as the Perfect Game Project.

20.     The solicitation heated up in late January 2020.   Lowe was seeking predevelopment funding for the Perfect Game Project, and the sum of Eight Hundred Thousand Dollars ($800,000) was being discussed as the investment amount.

21.     Lowe met with that member on February 2, 2020 and provided him with materials and information regarding the Perfect Game Project.

22.     On February 4, 2020, Lowe informed the member that "We're already $600k in!!!" meaning costs incurred for the project.

23.     On February 7, 2020, Lowe asked if CVS would "be interested in infusing $250k now for a "juiced" percentage ownership" as the city of Hutto was asking for Lowe to provide that amount toward funding of the city's costs for the project.   Lowe stated, "With my divorce I can't do it but I'd make it worthwhile if [CVS] would be interested?"

24.     Apparently neither Lowe nor his companies had the financial means to make that infusion to continue the project.

25.     On February 7, 2020, Lowe sent an email reiterating his need for the advancement of $250,000, stating that "I would really like to be able to honor the City request."

26.     CVS, however, wanted further information, including Lowe's personal financial statement.   On February 9, 2020, Lowe provided a personal financial statement with a date of June 30, 2019.   In his cover email providing that information, he states that "Does not look quite so good with divorce but it is what it is…"

27.     Lowe's personal financial statement showed total assets of $54,888,728, with liabilities of $5,621,568 (comprised of a line of credit with CrossFirst Bank, a debt of $500,000 to Mutual of Omaha, a debt of $334,235 to United Bank, and a debt of $120,000 to Wells Fargo), leaving a net worth of $49,257,160.

28.     As is discussed below, Lowe's personal financial statement did not disclose any of the liabilities discovered by CVS which both existed at that time in a liquidated form, and other pending and threatened litigation against Lowe personally and against his companies. These liabilities total Millions of Dollars, much of which remains unpaid today – and which creditors have not been able to recover from Lowe or his companies.

29.     The very next day after providing the questionable financial information, Katz provided Lowe with a draft promissory note to be presented by Lowe to CVS, which he did that very same day.

30.     At 7:48 a.m. the next day, February 11th, Lowe texted the CVS member stating, "If any way to wire to us today it would be hugely helpful."   Lowe was clearly desperate for funds at this time – despite his advertised personal wealth of over $50 Million.

31.     Lowe communicated with the CVS member all that day pushing for the funds.

32.     At 3:49 p.m. on February 11th, Lowe texted "The reason we "juice" these returns is to motive partners to expedite   I know you understand the returns here..%ownership is hugely disproportionate to the loan/equity contribution."

33.     On or about February 11, 2020, defendants Lowe and Legacy Hutto executed and delivered a certain promissory note in the principal amount of Two Hundred Fifty Thousand Dollars ($250,000) ("$250,000 Note") to CVS in consideration of the loan by CVS of that amount, a copy of which is attached hereto as **Exhibit 1**.

34.     The $250,000 Note was prepared by Katz.

35.     The $250,000 Note provides for:

a.     Interest at the rate of twelve percent (12%) per annum from and after its date of February 11, 2020, computed on the actual days elapsed using a 360-day year.

b.     The indebtedness evidenced thereby to be converted into a membership interest in Legacy Hutto upon the occurrence of certain events as provided therein.   The events required for conversion on the next business day following the date on which both:

(1) the issuance of the first in a series of bond obligations issued by the City of Hutto, Texas (the "Bonds") in connection with the development of the Project (defined in the Master Development Agreement dated as of September 20, 2019 by and between the City of Hutto, Texas and Legacy) has closed; and

(2)  all or a portion the Bonds have been purchased by third-party purchasers, or Preston Hollow, LLC; or Preston Hollow, LLC has advanced over $100,000,000 in some form of debt ; or anytime at the request of Daniel H. Lowe

after Due Diligence has been completed as contemplated by the Master

Development Agreement or required by Preston Hollow, LLC.

    c.      The exact percentage of the membership interest would be calculated

based upon the principal and interest due and owing to CVS as of the date of conversion.

        (1) The principal indebtedness due under the $250,000 Note would

convert to a four and seven tenths percent (4.7%) membership interest in Legacy

Hutto; and

        (2) The accrued interest as of the date of conversion would convert into an

additional percentage membership interest calculated by dividing the amount of

interest then owed by 250,000 and then multiplying that result by 4.7.

    d.      The joint and several liability of the borrowers, defendants Lowe and

Legacy Hutto.

    e.      A maturity date of February 12, 2022 unless sooner paid or converted into

a membership interest in Legacy Hutto.

    f.      The borrowers, Lowe and Legacy Hutto, would pay all costs of collection,

including reasonable attorney fees.

    g.      The consent of the borrowers, Lowe and Legacy Hutto, to jurisdiction in

certain named courts; however it does not require any legal action to be brought only in

those courts.

36.     The $250,000 was funded by wire transfer the next day, February 12, 2020.

37.     Discussions continued between CVS and Lowe for a further investment of

$800,000.   On February 19, 2020 at 7:17 a.m., Lowe texted that "I know I am always in a hurry.

You're beginning to see what the biz is like.   Always someone to pay."

38.     On February 21, 2020, at 12:590 p.m. CVS stated that the $800,000 could be funded on March 4, 2020.   Lowe texted back within two minutes, at 1:01 p.m., asking "Is there any way to do 400 by Friday?"

39.     CVS's response was that no funding would be done until a contract was in place.

40.      On February 24, 2020 at 8:29 a.m., Lowe texted "I have a call w Rick to get documents done today.   I'll get outstanding invoices for hutto today.   Is there any way possible to gather half the proceeds by Friday?'

41.     When no response was made within two hours, Lowe again texted to inquire as to the funds.

42.     The draft agreements were provided to CVS on February 25, 2020.

43.     On February 26, 2020 Lowe texted requesting CVS to push its own lawyer to work faster on the transaction since Katz did not receive requested reply.

44.     On February 27, 2020, CVS texted that the funds would be ready to be sent by March 3rd or 4th.   Lowe responded by stating "…funding next week will really create an issue. Unfortunately I set expectations based upon our discussions.   I know you're doing all you can do…that said, is there ANY WAY possible…any way at all, that you could do some portion of it?   Even a token $100k to let them know we're starting to fund?"

45.     Shortly thereafter on that same day, CVS again emphasized that signed documents were needed for any funding.   Lowe responded by stating "if there is any way to do that tomorrow it would help so much   I'll call rick now"

46.     At 9:49 p.m. on that same date, Lowe texted he had the documents to sign and asked, "Think it's possible at all to get 100 wire sent am first thing ?!"

8

47.     More communications followed that night, including Lowe texting at 10:21 p.m. "Anything you could do to make the call in the morning to initiate the wire would sure be appreciated."

48.     The next morning there were still documents to be signed, so the wire was held off pending those signatures.   At 11:53 a.m. Lowe texted "I think we all agree the documents will be signed.m!!!   Would it be possible to initiate the wire so we don't miss wire time today?"

a.     Two hours later, since CVS was still waiting on some response from Katz, Lowe texted at 1:29 p.m. "I'm afraid we are going to miss wire time.   Can we please do this?   Docs will get signed I'm sure   Would really appreciate it   Thx"

b.     Lowe was clearly panicked over a delay in receiving $100,000, again despite the fact that he had personal resources of approximately $50 Million.

c.     Twenty minutes later at 1:49 p.m., another Lowe text "We are getting too close to wire time ending   Its critical I not miss."

d.     Fourteen minutes after that at 2:03 p.m. Lowe texted "Can we please close the $100,000   I'll sign the other [contract] when back at the office"

e.     Twenty minutes later at 2:23 p.m., Lowe texted "Can you PLEASE send wire.   I'm in a board meeting   I've signed for the 100k   You know where to find me Can you trust I'll sign at 415 when I open up"

f.     The wire was sent and confirmed at 2:34 p.m.

g.     Despite Lowe's promise, at 4:45 he had still not signed the contracts.

h.     At 9:04 p.m. Katz texted CVS and Lowe "Let's sign the right contracts. Off this weekend at the lake but we will be sure."

9

49.     Sometime thereafter, but dated February 28, 2020, defendants Lowe and Legacy Hutto executed and delivered to CVS a certain Membership Interest Purchase and Sale Agreement ("PSA"), a copy of which is attached hereto as *Exhibit 2*.

      a.     The PSA was prepared by Katz.

50.     The PSA provides for:

      a.     The framework for the investment made by CVS which is also memorialized by the $250,000 Note and also the $800,000 Note defined below.

      b.     The PSA specifically states that it is applicable to the investment memorialized by the $250,000 Note in addition to the newly solicited $800,000 investment memorialized by the $800,000 Note.

      c.     The investment solicited from CVS which is represented by the $250,000 Note, the PSA and the $800,000 Note are securities as defined by Section 2(a)(1) of the Securities Act of 1933 and federal case law.   *See Marine Bank v. Weaver*, 455 U.S. 551, 555-56 (1982)(the definition of security is meant to be "quite broad").

51.     The PSA makes certain material representations and warranties which were relied upon by CVS.

52.     Pursuant to the PSA, all representations and warranties survive the execution and delivery of the PSA, any investigation at any time made by or on behalf of any party.

53.     Pursuant to the PSA, Lowe and Legacy Hutto shall indemnify and hold CVS harmless from any and all damage, loss, penalty, liability, cost and expense, including reasonable attorney fees, incurred as a result of a material breach of a representation or warranty made by them.

54.     As with the PSA, sometime thereafter but dated February 28, 2020, defendants Lowe and Legacy Hutto executed and delivered a certain promissory note in the principal amount of Eight Hundred Thousand Dollars ($800,000) ("$800,000 Note") to CVS in consideration of the loan by CVS of that amount, a copy of which is attached hereto as ***Exhibit 3***.

a.      The $800,000 Note was prepared by Katz.

b.      The $800,000 Note provides for interest at the rate of twelve percent (12%) per annum from and after its date of February 28, 2020, computed on the actual days elapsed using a 360-day year.

c.      The $800,000 Note provides for the indebtedness evidenced thereby to be converted into a membership interest in Legacy Hutto upon the occurrence of certain events as provided therein.   The events required for conversion on the next business day following the date on which both:

(1) the issuance of the first in a series of bond obligations issued by the City of Hutto, Texas (the "Bonds") in connection with the development of the Project (defined in the Master Development Agreement dated as of September 20, 2019 by and between the City of Hutto, Texas and Legacy) has closed; and

(2)  all or a portion the Bonds have been purchased by third-party purchasers, or Preston Hollow, LLC; or Preston Hollow, LLC has advanced over $100,000,000 in some form of debt ; or anytime at the request of Daniel H. Lowe after Due Diligence has been completed as contemplated by the Master Development Agreement or required by Preston Hollow, LLC.

d.      The exact percentage of the membership interest would be calculated based upon the principal and interest due and owing to CVS as of the date of conversion.

(1) The principal indebtedness due under the $800,000 Note would convert to a fifteen and four one hundredths percent (15.04%) membership interest in Legacy Hutto; and

(2) The accrued interest as of the date of conversion would convert into an additional percentage membership interest calculated by dividing the amount of interest then owed by 800,000 and then multiplying that result by 15.04.

e.      The $800,000 Note expressly provides for the joint and several liability of the borrowers, defendants Lowe and Legacy Hutto.

f.      The $800,000 Note matured on February 28, 2022 unless sooner paid or converted into a membership interest in Legacy Hutto.

g.      The $800,000 Note provides that the borrowers, Lowe and Legacy Hutto, would pay all costs of collection, including reasonable attorney fees.

h.      The $800,000 Note provides for the consent of the borrowers, Lowe and Legacy Hutto, to jurisdiction in certain named courts; however it does not require any legal action to be brought only in those courts.

55.      The funding of the $800,000 was still planned for March 4, 2020.

56.      On March 2, 2020 at 10:11 a.m. Lowe texted "Is there any chance that you have $36k in funds today we could use for a vendor by chance"   CVS responded in the affirmative, and further confirmed that the full amount of the investment could be funded that day.

57.      The $800,000 was wired to Lowe on March 2, 2020.

58.      However, once the money was received by Lowe, he did not respond so timely any more.

59.     On March 2nd, 3rd, and 5th when CVS inquired as to if the funds were received ,
and to updates on the Perfect Game Project, Lowe finally responded on the 5th with "K"    CVW
inquired again on the 6th, and go no response until March 7th at 6:20 p.m. when Lowe put off a
conversation to the following day.

60.     CVS sought updates from Lowe on March 24th, particularly in light of the COVID
pandemic that had begun, and Lowe responded with "I would suggest that we have that
discussion in a week after things settle a bit."   CVS reiterated that it wanted security that the
funds were properly invested and it would get the Legacy Hutto ownership position or worst case
the 12% return in two years.   Lowe's response made at 8:28 p.m. was "Yes but highly highly
unlikely we go there   If we fail out at Hutto for some crazy reason we will move [CVS] to
shawnee or one of our other deals   ***We will NEVER lose this investment***"   (emphasis added).

61.     On June 2, 2020 CVS requested Lowe to provide an update.   That request was
followed up on June 3rd and 5th.   Lowe finally responded June 8th that he would provide a
response.

## **Perfect Game Project Failure Leads to Litigation**

62.     The legal action was initiated by Legacy Hutto on June 12, 2020 against the City
of Hutto, Texas and its mayor, city manager and city council by filing suit in the 395th Judicial
District Court of Williamson County, Texas styled as ***Legacy Hutto, LLC v. City of Hutto,
Texas, et al.***, case number 20-0863-C395   The gravamen of that action was the alleged breach
of contract by Hutto, Texas, primarily in that Hutto did not properly arrange for financing

including the issuance of bonds (which was a condition to the conversion of the subject investment by CVS into an ownership interest in Legacy Hutto) and the project could not proceed.

63.     Thus, on June 12, 2020, merely four months after soliciting and receiving One Million Fifty Thousand Dollars ($1,050,000) from CVS, Lowe and Legacy Hutto knew that the requirement for conversion of the indebtedness to an ownership interest in Legacy Hutto could not be met, leaving obligation for repayment which would mature in approximately one and one-half years.

64.     On June 16, 2020, and Lowe finally emailed CVS with an update.   The update, however, was news that the city of Hutto did not have the required bond financing for the project and that it owed Legacy Hutto more than $3 Million in expenses.   In fact, the litigation had already been filed, but Lowe did not inform CVS of its preparation or filing until after the fact.

65.     On June 22, 2020 CVS responded to that email asking for updates on the progress and reiterating the expectation for the contracted return.

66.     On September 2, 2020 – after three months of no response, CVS again emails asking for an update. CVS states that if there are no concrete plans to make the Perfect Game Project progress, it wants its funding returned with the contracted rate return.

67.     On September 3, 2020, Lowe responds with stating he will update, and actually does that same date via email.   Lowe discusses the legal action taken against the city of Hutto, and mentions a "new plan" for the Perfect Game Project but moved to another nearby city in Texas.

68.      CVS thereafter requests updates, starting on September 8, 2020, continuing on the 10th, 12th, 14th, 15th, 16th, 18th, 19th and 22nd, when finally a conference call was held.

69.     On November 17, 2020, CVS made written demand for return of its investment at the contracted rate of return.   The Perfect Game Project was not proceeding, that it would be mired in litigation and that would not ever proceed as advertised.

70.     Lowe responded four days later on November 21, 2020, stating that "I want to do all I can to assist your team and to calm nerves."   He stated that he had updates on the litigation and the Perfect Game Project and requested a conference call with CVS to discuss the matter. That conference call did not occur.

71.     CVS continued to reach out to Lowe for updates.   On December 2, 2020, Lowe promised to send an update.

72.     Almost two weeks go by, and on December 15, 2020, CVS emails Lowe and states that no update has been received.   Seven days after that, on December 22, 2020, Lowe finally responds that he could take part in a conference call that evening.

73.     The following day, Lowe sent CVS information on the lawsuit filed against the city of Hutto.   Thereafter, on December 27, 2020, Lowe texted that "Looks like Hutto lawsuit may get settled !!"

74.     Into the new year, on January 12, 2021, CVS inquires as to any updates on a settlement with the city of Hutto.   Lowe responds two days later and says he will send update.

75.     No update came from Lowe, however, until January 20, 2021, claiming "we have been in court for several days, arguing a variety of motions."   He then offered to discuss details of the litigation, but failed to share any – essentially giving no update at all.

76.     As is par for the course, CVS again commences with requests for updates which remain unanswered.   Requests made February 2, 2021, the 3rd, the 17th, the 24th, March 1st, the 6th, and the 10th.   Lowe finally responds on March 12, 2021 via email stating in a tone inferring

he has voluntarily come forward with updates in the past "Gentlemen, I wanted to reach out once again to bring you up to speed on the status of our Hutto lawsuit and the progress we have made with Perfect Game for a replacement project in Missouri City.    As noted in my last communication, while I am confident that we will prevail in our legal action against the City of Hutto, it will take some time."   Lowe goes on to lead CVS to believe that the Perfect Game Project will eminently be approved by Missouri City, and that "We can discuss how this affects the project at a later date after the City approves us to move forward."

77.     That approval never came.

**CVS Formally Demands Payment of Investment and Guaranteed Return**

78.     On April 10, 2021, CVS emailed Lowe to schedule call to discuss CVS getting its investment out of the venture.   Lowe responded the same day, saying "I'm always happy to get on the phone to chat.   Happy as well, to provide a project update"   He then states for the first time in any communication that "When discussing the note that was ultimately executed it was my belief that all parties were aware that if the deal did not happen in Hutto that it deal would be relocated.   In such we landed on a March 2022 note expiration. … Are you suggesting that there is an interest in an earlier payoff of the note?   If so, what are your thoughts?   I'd not contemplated this."

a.     Lowe makes that statement in light of the multiple requests and demands from CVS for the immediate return of the investment with the statement return, which are referenced above, dating back to September of 2020.

b.     CVS responds to Lowe's email, pointing out just that fact.   CVS also points out that the notes do not say the project can be moved to another location.

16

c.     Lowe's response is short – "Funds from Hutto litigation" clearly meaning that CVS's investment will only be repaid from that source.

79.     On April 16, 2021, the District Court entered an order granting the City of Hutto's motion to dismiss the case, but also ordered that Legacy Hutto could amend its pleadings to address perceived shortcomings.   Apparently on that same date the City of Hutto appealed the order.   On April 29, 2021, Legacy Hutto filed its amended pleading and shortly thereafter filed its own notice of appeal of the order.

80.     Nothing for months from Lowe and his camp, so CVS reaches out on October 4, 2021 for an update.   Lowe responds the next day saying he is happy to get on a call or have Katz provide a written update.   CVS responds that same day that it would like both.

81.     Nothing from Lowe or Katz for weeks, so on October 25, 2021 CVS sends email stating it is still waiting for the response.   Lowe responded that same day that Katz had met with a lawyer representing CVS a few days before and that he assumed CVS got update from that lawyer.   Lowe offered to have a call though if CVS desired.   CVS responded in the affirmative, and Lowe asked "What is the agenda"   CVS's agenda, as always, is the return of its investment with the guaranteed return.

82.     Five days later, Lowe responds with a proposal to have a conference call the upcoming Monday, to which CVS agrees.

a.     During the call, Lowe represented that he and his companies would have funds to repay the investment with the promised return no later than February 2022.

b.     Lowe also represented that he would promptly provide an updated personal financial statement.

83.     On December 6, 2021 CVS sent a follow-up email to Lowe to confirm the last call, and to follow-up on the updated personal financial statement which had not yet been provided.   There was no response to this email.

84.     On December 14, 2021, CVS sent another follow-up email to Lowe, reiterating the request for the updated personal financial statement.   Lowe responded five days later, on December 19, 2021, professing that "I was not remembering I owed the updated financial.   Let me get with Rick."

85.     Nothing for the next month, so on January 14, 2022, CVS sent yet another follow-up email to get the updated personal financial statement and to remind Lowe of the upcoming payment date on the investment.   No response from Lowe.

86.     No updated personal financial statement was ever provided by Lowe as promised.

87.     Another follow-up email was sent to Lowe on January 15, 2022.   Again, no response from Lowe.

88.     On January 31, 2022 another follow-up email was sent to Lowe.   No response from Lowe.

89.     On February 2, 2022 another follow-up email was sent to Lowe.   No response from Lowe.

90.     On February 5, 2022 another follow-up email was sent to Lowe.   Surprisingly, Lowe responds saying "I have been out for a few days" not accounting for no responses for the last two months!   He did go on to state that he will provide a more detailed note later that evening, and that "Plan is to honor our agreement"

91.     On February 6, 2022 CVS sent an email to Lowe providing banking information for the payment to be made to CVS.   Lowe responded that "I am to have funds available by the

end of this week from a pending transaction.   I intend to transfer funds from the transaction to your group."

92.     The litigation between Legacy Hutto and the city of Hutto case is presently with the Seventh Court of Appeals in Amarillo, Texas, now styled as ***City of Hutto, Texas, et al. v. Legacy Hutto, LLC***, case number 07-21-00089-CV.   The parties submitted their briefs and on February 9, 2022 the Court of Appeals submitted the matter without oral argument for decision, which remains pending as of the date of filing of this Complaint.

93.     Lowe did not inform CVS of this fact.

94.     On February 11, 2022 at 7:01 p.m. CVS sent an email to Lowe confirming that the payment required by that date on the $250,000 Note did not arrive and the banks were closed. Lowe responded shortly thereafter claiming he is meeting with Katz in the morning and that his paperwork showed a month-end due date – which is false as to the $250,000 Note.   CVS responded with the exact maturity dates for each of the $250,000 Note and $800,000 Note.

95.     On February 14, 2022, CVS sent Lowe an email stating that still no funds received and that the $250,000 Note had matured.   No response was made by Lowe.

96.     CVS was then informed by its counsel that Lowe and Legacy Hutto were seeking a 60-day extension to pay the $250,000 Note.   CVS stated in an email on February 20, 2022 to Lowe that it would consider extending the $800,000 Note so long as the $250,000 Note with all accrued interest was paid.

97.     Lowe later responded via email stating that it "is important for me that I deliver information and dates that I can live by."

        a.     Lowe represented that "I will be able to pay the first of our two notes [referring to the $250,000 Note], in its entirety, by March 25."

b.    Lowe went on to state that by that date "I will have a firm date upon which the balance of the amount owed, will be paid."

98.    March 25, 2022 came and went with no payment from Lowe and no date upon which the balance owed would be paid.

99.    Upon information and belief, neither Lowe nor Legacy Hutto had the ability to repay any indebtedness to CVS from and after June 12, 2020, despite the repeated representations to the contrary.

**Discovery of Lowe's History and Failure to Disclose Material Facts**

100.    Finally, after concerns kept growing without any substantive answers from Lowe and Legacy Hutto, CVS began to look a little deeper into Lowe and his dealings.   Through extensive research, CVS has discovered a substantial history of real estate projects with solicitations of investments from third-parties based upon misrepresentations and fraudulent inducements, failures of projects, and litigation in many state and federal courts.   To make this worse, many of these materially adverse matters which were not disclosed by Lowe, Legacy Hutto, the Lowe Entities, Katz, SPvG or KL were in full swing during the time that CVS was solicited for its investment and thereafter while Lowe and Legacy Hutto, with Katz's assistance, continued to assure CVS the investment would be paid as owed.

101.    As a result of research conducted by CVS, the following information has been discovered, all of which would have been material to the investment decision CVS made and its decision to accept the excuses of Lowe and Legacy Hutto regarding the project and the prospects of being paid on its investment:

a.    Less than two years before CVS made its investment, Lowe and certain of his companies was sued in the United States District Court, Western District of Missouri

in a case styled as *S.V.O. Bettis, LLC v. Dan Lowe, Legacy Venture West Development, LLC and RED Walnut, LLC*, Case Number 16-CV-01278.

(1) This case was filed on December 7, 2016.   Lowe solicited an investment of $250,000 for a development referred to as the Truman's Market Grandview Project.   Lowe used a document entitled a Note Purchase Agreement to memorialize the investment.   This document is very similar to the promissory notes and the Membership Interest Purchase and Sale Agreement used with CVS. All of these documents were drafted by Katz.

(2) The investment in this matter was made on August 23, 2012.   It was determined that most if not all of the invested funds were used by Lowe to pay expenses unrelated to the project in which the funds were to be used.   The project failed just as the project for CVS failed.   Despite the plaintiff's attempt to find out more information which was promised by Lowe, Lowe never provided promised information.   The plaintiff held off pursing legal action relying on Lowe's promises of repayment, and finally filed suit in 2016.   The lawsuit stated claims for securities fraud (both Federal 10b-5 and state law claims), fraud, conversion and breach of contract.

(3) The case was dismissed by agreement on August 31, 2018, after the dispute was apparently settled.

b.      On January 20, 2017, Lowe and one of his companies was sued in the Circuit Court of Jackson County, Missouri, in a case styled as *BVSEF III Legends, LLC v. Venture West II, LLC and Dan Lowe*, Case Number 1716-CV01792.   This case was dismissed by the parties on August 31, 2018, apparently due to a settlement.   The source

of funds for any settlement is unknown.

   c. On November 20, 2017, suit was brought in the Circuit Court of Jackson County, Missouri, styled as ***David Hulshof, REDCA Holdings, LLC, James Gould Venture Group VI, LLC v. Legacy Truman, LLC, Legacy Venture West Development, LLC, DHL, LLC, Red Walnut, LLC and Dan Lowe***, Missouri, Case Number 1716-VCV28570.

    (1) The basis of the suit was related to the same investment which caused the S.V.O. case discussed above to be filed, and the parties in this case are related to those in the S.V.O. case.

    (2) The case was dismissed by the parties on September 11, 2018, apparently due to a settlement.   The source of funds for any settlement is unknown.

   d. On February 2, 2018, suit was filed in the Circuit Court of Jackson County, Missouri, styled as ***VC Associates, LLC, 46 PC Investors, LLC, BFPC, LLC, BKPC, LLC v. Dan Lowe, Venture West II, LC, Seventh Church of Christ***, Case Number 1816-CV02974.

    (1) This case was pending when the CVS investment was solicited, but never disclosed to CVS.

    (2) <u>This liability of Lowe and VW was not reflected on Lowe's personal financial statement dated June 30, 2019 and provided to CVS on February 9, 2020</u>.

    (3) The case was dismissed by the parties on May 12, 2020, apparently due to a settlement.   The source of funds for any settlement is unknown.

(4) It should be noted that this case was settled approximately three months after CVS made its investment with Lowe and Legacy Hutto.

e.        On October 8, 2018, suit was filed in the Circuit Court of Jackson County, Missouri, styled as ***James Sides v. Legacy Venture West Development, LLC and Daniel Lowe,*** Case Number 1816-CV26595.

(1) Mr. Sides was a highly paid employee of Lowe, tasked with raising capital for Lowe's projects – like the Hutto project for which CVS's investment was solicited.

(2) The petition filed relates that Lowe has failed to repay loans from an investor that Sides had solicited for $1,000,000.   He also states that he entered into other investments with Lowe.   He further states that Lowe admitted addition to opioids, other drugs and alcohol.

(3) Sides relates that Lowe made numerous false and misleading statements to lenders and investors, and that Lowe inflated reports of his assets in order to secure loans.

(4) He further states that Lowe takes funds from one project to fund others without disclosing that fact to any of the investors.

(5) Lowe's pleadings only make general rote denials of the allegations against him.

(6) This case is still pending at this time.   Jury trial is set to begin on June 21, 2022.

f.        Less than six months before soliciting the investment from CVS, Lowe and one of his companies were sued in the District Court of Wyandotte County, Kansas,

in a case styled as ***KKR Legends, LLC v. Venture West II, LLC and Daniel H. Lowe***,
Case Number 2019-CV-000756.

> (1) This liability of Lowe was not reflected on Lowe's personal financial
> statement dated June 30, 2019 and provided to CVS on February 9, 2020.

> (2) A Consent Judgment was entered on August 26, 2019 for
> $1,702,219.12.

> (3) It appears that it was resolved, as a Satisfaction of Judgment was filed
> on December 6, 2019.   The source of the funds to satisfy the judgment are
> unknown.

g.     Literally days before obtaining the investment funds from CVS, on
February 7, 2020 Lowe was sued in the United States District Court, District of Kansas,
in a case styled as ***Helmer W. Oberg and Kathy Lindsey as trustee of the Jeff Oberg
Insurance Trust v. Daniel H. Lowe***, Case Number 20-CV-02055.

> (1) Lowe solicited an investment with regard to a project referred to as
> Liberty Commons.   Promissory notes were used to memorialize the investments
> made.   The investment solicited from Oberg was for $849,637.   Lowe issued
> Oberg a promissory note on February 16, 2019 in that amount.   Lowe also
> solicited further investment of $473,113 from the Oberg Trust, which was
> memorialized by a promissory note dated February 16, 2019.   Both notes were
> due upon the sale of an outparcel in that project, and if the sale did not occur
> earlier, they were due and payable on September 15, 2019.   This mimics the
> format of terms of the subject notes issued to CVS.

> (2) Lowe defaulted on both notes without any payments being made.

Notice of default was served on October 16, 2019.

(3) Lowe confessed judgment on the notes, and judgment was entered on July 15, 2020 for $1,535,944.44.   <u>This was less than five months from getting more than $1,000,000 from CVS, and never disclosed</u>.

(4) The Obergs aggressively sought to execute on the judgment, including against multiple investment entities owned and/or controlled by Lowe, none of which are involved with the CVS dispute.   The Obergs have sought to take Lowe's deposition for purposes of a debtor's examination on several occasions, but it has been continued each time, and is now presently set for June 3, 2022.

(5) According to the most recent filings in that case, <u>nothing has been paid or recovered despite extensive efforts at collection, and Lowe remains indebted in an amount now exceeding $2 Million, and interest accrues at a rate of $606.63 per day</u>.

(6) <u>This liability of Lowe was not reflected on Lowe's personal financial statement dated June 30, 2019 and provided to CVS on February 9, 2020</u>.

(7) Clearly if Lowe cannot pay this debt, he could not pay the debt owed CVS which he continually represented would be paid.

h.      On August 25, 2021, suit was filed in the Circuit Court of Jackson County, Missouri, styled as ***Country Club Plaza JV LLC v. Legacy Venture West Development LLC***, Case Number 2116-CV18826.

(1) The case was brought for unpaid rent for Lowe's headquarters for all of his companies.

(2) The case was dismissed on October 20, 2021, without prejudice,

though it appears that the dispute still exists.

i.        On February 5, 2021, suit was filed in the United States District Court, Southern District of New York, styled as ***Hoguet Newman Regal & Kenney, LLP v. Dan Lowe***, Case Number 21-CV-01048.

(1) The plaintiff is a law firm that Lowe had hired to represent him, Venture West Development, LLC and Venture II, LLC in a dispute in Dallas, Texas with a former business partner regarding a development or developments, though which developments are not known at this time.

(2) Lowe paid a retainer of $25,000 on January 11, 2020, and was thereafter billed for fees and expenses and owes a principal balance of $128,862.84 as of May 18, 2020.   Lowe has not made any payments on the fees and expenses other than the original retainer.

(3) Lowe was served with process but has failed to respond, and a default judgment was entered on December 13, 2021 as to liability, with the magistrate directed to determine the final amounts owed, which remains pending at this time.

j.        On December 16, 2021, an action to confirm an arbitration award against Lowe was filed in the United States District Court, District of Kansas, styled as ***TI Education Services LTD. v. Daniel Lowe***, Case Number 21-MC-00216.

(1) The arbitration had been commenced on January 20, 2021, and an award was entered against Lowe on September 23, 2021 in the principal amount of $115,237.73, plus legal fees and costs exceeding $70,000.

(2) Lowe failed to respond, as is his normal pattern in many cases, and a motion for default was filed on February 2, 2022.

26

(3) Judgment was entered on March 16, 2022 against Lowe in the amount stated above.

k.       On January 5, 2022, suit was filed against multiple Lowe companies in the District Court of Johnson County, Kansas, styled as *Olsson, Inc. v. Venture West II, LC, Venture West Development III, LLC and Venture West Development, L.L.C.*, Case Number 22LA00083.

(1) This case was filed due to non-payment for services performed for another Lowe project which is also the subject of investor litigation involving some related parties to this instant action, seeking $40,212.62.

(2) The case was dismissed apparently due to settlement on January 11, 2022.   The source of funds for that payment are unknown.

l.       On April 22, 2022, a suit was filed against Lowe and many of the parties to this action in the United States District Court, District of Kansas, styled as AVD Bellmont LLC v. Daniel Lowe, Legacy Venture West II, LLC, Venture West II, LC, Legacy Shawnee, LLC, Venture West Development, LLC, Legacy OC, LLC, Venture West III Development, L.L.C., Venture West Development III, LLC, Richard B. Katz, Sandberg Phoenix von Gontard, P.C, and The Katz Law Firm, L.C., Case Number 2:22-cv-02153-KHV-KGG.

(1) This case was filed due to the solicitation of an investment for a project to be developed in Shawnee, Kansas, and was solicited from a company related to CVS in that it has a common member.

(2) The allegations in this case closely follow those in the instant filing by CVS, and show the pattern of the defendants in soliciting investments based upon

false misrepresentations and failure to disclosure material facts.

(3) This case seeks damages in excess of One Million Dollars ($1,000,000).

### Fraud and Conspiracy

102.     As of the date of the PSA, the $250,000 Note and the $800,000 Note (and which is the same as of the filing of this Complaint), certain of the representations and warranties contained in those documents were false, and were known to be false at that time and thereafter never disclosed by defendants Lowe, Legacy Hutto, the Lowe Entities, Katz, KL and SPvG, including but not limited to that:

a.     Lowe had the "absolute right to sell, transfer, assign, convey and deliver the Company Interest" to CVS;

b.     The "Company Interests are free and clear of all liens or encumbrances of any kind or nature";

c.     "There are no restrictions against transfer, or arrangements of any kind with respect to the sale and transfer by [Lowe] to [CVS] of the Purchased Interest";

d.     "The execution, delivery and performance of this Agreement by [Lowe and Legacy Hutto] does not require the consent of any third party, whether under the Articles of Organization, or any agreement by which either of them are bound, or otherwise";

e.     Lowe and Legacy Hutto "each has the full capacity, power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement";

f.     Legacy Hutto, Lowe, Katz, KL and SPvG provided CVS with true and accurate information regarding the investment, and the legal and financial status of Lowe and Legacy Hutto; and

103.     SPvG does not represent "any Purchaser Entity and Investor" (a member of CVS was represented by another SPvG attorney at the same time as Katz was representing Lowe and the Lowe Entities).

104.     As evidenced by Lowe's history and that of his many entities, and facts dating back to the date that CVS was solicited for an investment to the present, Lowe, the Lowe Entities, Katz, KL and SPvG have made material misrepresentations of material facts to CVS, and have failed to disclose material facts to CVS, all of upon which CVS reasonably relied, leading to the damages it has suffered at the hands of the defendants.

105.     Each of Katz, KL and SPvG were employees or otherwise associated with, and all materially aided the conduct of Lowe and the Lowe Entities, giving rise to their liability to CVS.

106.     Katz, by and through KL and SPvG, has represented Lowe and his many entities for more than twenty years, and worked hand-in-hand with Lowe to create the multiple and various schemes to solicit investors and perpetuate the frauds as described in this Complaint.

107.     As shown by an excerpt from the Legacy Hutto Operating Agreement, it, Lowe, and the then named sole member of Legacy Hutto, being HL, Inc (another Lowe company) were all represented by SPvG:

11.14. **Agreement Drafted by Counsel to Company, HL Inc., and Daniel H. Lowe**. Each Member acknowledges that (i) Sandberg Phoenix & von Gontard, P.C., ("**SPVG**") has prepared the Articles and this Agreement on behalf of and in the course of its representation of the Company, HL Inc. and Daniel H. Lowe and (ii) each other Member has been previously advised and is now advised again of potential conflicts of interest that may exist, now or in the future, between such Member's Interest and those of the Company and the other Members, and each Member has been advised by such law firm to seek independent counsel.  In addition, SPVG advises each Member to seek independent tax and accounting counsel.  The other Members acknowledge that SPVG, as counsel for the Company, HL Inc. and Daniel H. Lowe, may serve as counsel for the Company after the date of this Agreement, and in the course of its representation of the Company, HL Inc. and Daniel H. Lowe, potential conflicts of interest may exist now or in the future between the interests of the other Members and those of the Company, HL Inc. and Daniel H. Lowe.  After consultation with their own counsels, the other Members hereby waive any such conflicts of interest.  SPVG shall be deemed to be a third-party beneficiary of this Section.

108.    A further fact of note to illustrate the conspiracy and relationship of Katz with Lowe and the Lowe Entities is found in other transactional documents prepared by Katz for use in transactions with other solicited investors in Legacy OC, LLC, another company owned and controlled by Lowe, wherein Katz's and KL's address is listed as that of Lowe and the Lowe Entities, not the address which Katz and KL shows on KL's filings with the Kansas Secretary of State or that Katz provides to the Kansas Supreme Court as his business address.   Following is an excerpt from one such document showing this relationship:

requested, postage prepaid, (iii) by overnight courier service, or (iv) by email to the addresses, as appropriate, set out below or at such other addresses as are specified by written notice delivered in accordance herewith:

| | |
|---|---|
| Purchaser | Legacy OC, LLC<br>4717 Central<br>Kansas City, MO 64112 |
| with a copy to | Richard B. Katz, Esq.<br>The Katz Law Firm, LC<br>4717 Central<br>Kansas City, MO 64112<br>rkatz@rkatzlaw.com |

109.    Following is an excerpt from the Legacy OC, LLC Operating Agreement stating that Katz was representing not only Lowe and various Lowe companies, but also himself, and his related entities and trusts in the transaction:

30

**11.14. Agreement Drafted by Counsel to Dan Lowe, the Company and their related interests and to the Richard B. Katz Living Trust. and Richard B. Katz as a Member.** Each Member acknowledges that (i) The Katz Law Firm, L.C. and Richard B. Katz ("Katz") has prepared this Agreement in its representation of the Company, Dan Lowe and his related entities (hereinafter collectively "Represented Parties.") and (ii) each other Member has been previously advised and is now advised again of potential conflicts of interest that may exist, now or in the future, between such Member's Interest and those of the Represented Parties, Dan Lowe and his related interests. **EACH MEMBER HAS BEEN ADVISED BY SUCH LAW FIRM TO SEEK INDEPENDENT COUNSEL.** The other Members acknowledge that Katz, as counsel for the Company, may serve as counsel for the Company after the date of this Agreement, and in the course of its representation of the Company, Dan Lowe, and his related entities and Richard B. Katz as a Member and his related entities or Trusts, potential conflicts of interest may exist now or in the future between the interests of the other Members and those of the Company, Lowe or Katz and any Member, Lowe and the Company. The Members are specifically advised that the interest held by Katz is also a potential Conflict of Interest as Katz may favor his own interest either intentionally or unintentionally. **KATZ SPECIFICALLY REQUESTS AND ADVISED ALL MEMBERS TO OBTAIN SEPARATE COUNSEL AS TO KATZ**

OpAg15 AMENDED FINAL.
August 27, 2021
Page 24

110.  Following is another excerpt from a Legacy OC, LLC document, this time a

Membership Interest Purchase Agreement, showing Katz as counsel to Lowe and the Lowe

entities, and as an owner of the entity himself either personally or through a related entity:

> 4.6.   Legal Representation and Potential Conflict of Interests. Investor acknowledges that: (i) Richard B Katz and the Katz Law Firm. ("KLF"), has prepared this Agreement and will prepare the Operating Agreement on behalf of and in its capacity as counsel for the Company and the Seller and his several affiliated companies; (ii) Katz does not represent any Investor; and (iii) Investor has been advised and encouraged by Katz to seek independent counsel in connection with his purchase of the Membership Interest.  For the purpose of this Agreement, Richard B. Katz on behalf of KLF, has represented and will represent the Company,

Page 4 of 12

---

other companies affiliated with the Company, Dan Lowe, Venture West III Development, LLC and other companies in which the Company and/or Seller has ownership interests, and has and will represented the Company under the Purchase Agreement and shall represent Lowe and his related entities. ***Each party has been advised to seek independent counsel.*** The parties hereto acknowledge that each have been previously advised and are now advised again of a conflict of interest that exists, in that Katz Firm, presently, and has in the past and will continue in the future, to represent the Company, Lowe, and other entities AND IN ADDITION Richard B. Katz or a related entity shall be the owner of the LLC.  That also creates a conflict of interest as Katz will be representing his entity, family or himself.    In addition, Katz advises each party to seek independent tax and accounting counsel. ***Each party again is advised to seek independent counsel.***

111.    It is further upon information and belief, that the funds from the CVS investment were not in whole or in part used for the Perfect Game Project, but were used by defendants for other purposes in violation of the party's agreements, without disclosure to CVS and without CVS's knowledge or consent.

112.    Lowe, the Lowe Entities, Katz, KL and SPvG failed to disclose to CVS material facts commencing when the investment was first solicited until the present which had CVS known of them would not have made the investment in the first place, or when the facts would have been made known to CVS, CVS could have taken action to recover its investment rather than being seduced into taking no action and now has lost its investment completely.   Those facts not disclosed, some as set out above, included but are not limited to:

a.      The lack of financial resources for Lowe and Legacy Hutto to conduct the Perfect Game Project as represented;

b.      The many litigation matters involving the defendants and the liabilities of the defendants thereunder most involving fraudulent actions on their behalf;

c.      The allegations of fraud and other wrongful acts made by other investors from whom defendants had solicited investments much like the fraud and wrongful acts that CVS believes defendants have occasioned upon it; and

d.      The false representation of the financial solidity of Lowe and his many entities, and the failure to disclose alleged and adjudicated liabilities when Lowe provided his personal financial statement to CVS.

**Count I**
**Violation of Section 10(b) of the Securities Exchange Act of 1934**

**COMES NOW** CVS**,** by and through its attorneys, and for Count I of its causes of action against all defendants, jointly and severally, states and alleges as follows:

32

113.    CVS incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 112 hereof, inclusive.

114.    Section 10 of the Securities Exchange Act of 1934 provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange
…
    (b)   To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement… any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 USC § 78j(b).

115.    The Securities Exchange Commission has promulgated such a rule, which provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

    (a)     To employ any device, scheme, or artifice to defraud,

    (b)     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person

in connection with the purchase or sale of any security.

SEC Manipulative and Deceptive Devices and Contrivances Rule, 17 C.F.R. § 240.10b-5.

116.    Section 3 of the Securities Exchange Act of 1934 defines a "security" as follows:

(10) The term ''security'' means any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any

profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting- trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities ex- change relating to foreign currency, or in general, any instrument commonly known as a ''security''; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 USC § 78(c).

117.    The transactions embodied by the PSA, $250,000 Note and $800,000 Note constitute the sale of a "security" as that term is defined in the Securities Exchange Act of 1934.

118.    As stated in this Complaint, defendants have employed a device, scheme, or artifice to defraud CVS.

119.     As stated in this Complaint, defendants have made multiple false statement and omissions of material facts.

120.    As stated in this Complaint, defendants have engaged in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person, being CVS.

121.    The (i) employment of a device, scheme or artifice to defraud CVS, (ii) false statements and omissions of material fact, and (iii) acts, practices and course of business that operates as a fraud or deceit upon CVS, all were intentionally done by defendants with the specific intent to deceive, manipulate and defraud CVS.

122.    CVS justifiably relied on those false statements and omissions of material fact.

123.    CVS has incurred significant damages as a proximate result of those false statements and omissions of material fact.

**WHEREFORE**, for Count I, CVS respectfully prays for judgment against all defendants, jointly and severally, for its actual damages in the principal amount of One Million Fifty Thousand Dollars ($1,050,000), with interest from and after February 11, 2020 at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of May 2, 2022, and continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00); for its legal fees and expenses; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

### Count II
### Violation of Missouri Uniform Securities Act of 2003

**COMES NOW** CVS**,** by and through its attorneys, and for Count II of its causes of action against all defendants, jointly and severally, states and alleges as follows:

124.    CVS incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 123 hereof, inclusive.

125.    The Missouri Securities Act of 2003, RSMo § 409-1.101, *et seq*, provides in pertinent part that:

> It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:
>     (1)   To employ a device, scheme, or artifice to defraud;
>     (2)   To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which it is made, not misleading; or
>     (3)   To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

RSMo §409.5-501.

126.    The Missouri Uniform Securities Act of 2003 defines a "security" as follows:

(28)   "Security" means a note; stock; treasury stock; security future; bond; debenture; evidence of indebtedness; certificate of interest or participation in a profit-sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; put, call, straddle, option, or privilege on a security, certificate of deposit, or group or index of securities, including an interest therein or based on the value thereof; put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency; or, in general, an interest or instrument commonly known as a "security"; or a certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.   The term:

   (A)   Includes both a certificated and an uncertificated security;
   (B)   Does not include an insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or other specified period;
   (C)   Does not include an interest in a contributory or noncontributory pension or welfare plan subject to the Employee Retirement Income Security Act of 1974;
   (D)   Includes as an "investment contract" an investment in a common enterprise with the expectation of profits to be derived primarily from the efforts of a person other than the investor and a "common enterprise" means an enterprise in which the fortunes of the investor are interwoven with those of either the person offering the investment, a third party, or other investors; and
   (E)   May include as an "investment contract", among other contracts, an interest in a limited partnership and a limited liability company and an investment in a viatical settlement or similar agreement.

RSMo § 409.1-102(28).

127.    The transactions embodied by the PSA, $250,000 Note and $800,000 Note constitute the sale of a "security" as that term is defined in the Missouri Uniform Securities Act of 2003.

128.    As stated in this Complaint, defendants have employed a device, scheme, or artifice to defraud CVS.

129.    As stated in this Complaint, defendants have made multiple false statement and omissions of material facts.

130.     As stated in this Complaint, defendants have engaged in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person, being CVS.

131.     The (i) employment of a device, scheme or artifice to defraud CVS, (ii) false statements and omissions of material fact, and (iii) acts, practices and course of business that operates as a fraud or deceit upon CVS, all were intentionally done by defendants with the specific intent to deceive, manipulate and defraud CVS.

132.     CVS justifiably relied on those false statements and omissions of material fact.

133.     CVS has incurred significant damages as a proximate result of the (i) employment of a device, scheme or artifice to defraud CVS, (ii) false statements and omissions of material fact, and (iii) acts, practices and course of business that operates as a fraud or deceit upon CVS.

134.     Defendants Lowe and Legacy Hutto are liable for CVS's damages pursuant to RSMo § 409.5-509(b) and (c).

135.     Defendants are jointly and severally liable for CVS's damages pursuant to RSMo § 409.5-509(g)(3).

**WHEREFORE**, for Count II, CVS respectfully prays for judgment against all defendants, jointly and severally, for its actual damages in the principal amount of One Million Fifty Thousand Dollars ($1,050,000), with interest from and after February 11, 2020 at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of May 2, 2022, and continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00); for its legal fees and expenses; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

## Count III
## <u>Fraudulent or Negligent Misrepresentation</u>

**COMES NOW** CVS**,** by and through its attorneys, and for Count III of its causes of action against all defendants, jointly and severally, states and alleges as follows:

136.    CVS incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 135 hereof, inclusive.

137.     The defendants intentionally misled and deceived, or in the alternative negligently misled and deceived, CVS with regard to its investment, is safety, that CVS's investment would be timely repaid or CVS would be placed in a suitable substitute project, and the use of the investment funds solely for authorized purposes as described above.

138.    The representations made by defendants were known to be false by them, or in the alternative defendants failed to exercise reasonable care or competence in making the representations.

139.    The representations were made intentionally or in the alternative negligently for the purpose of inducing CVS to act upon them.

140.    CVS did rely and act upon the representations.

141.    That as a result of the false representations of defendants, CVS has been damaged in the principal amount of principal amount of One Million Fifty Thousand Dollars ($1,050,000), with interest from and after February 11, 2020 at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of May 2, 2022, and continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00).

142.    Defendants acted in a fraudulent, willful, wanton and malicious manner toward CVS.

**WHEREFORE**, for Count III, CVS respectfully prays for judgment against defendants, jointly and severally, for its actual damages in the principal amount of One Million Fifty Thousand Dollars ($1,050,000), with interest from and after February 11, 2020 at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of May 2, 2022, and continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00); for punitive damages in an amount that will punish defendants and will deter them and others from engaging in similar conduct; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

### Count IV
### Fraud Through Silence

**COMES NOW** CVS, by and through its attorneys, and for Count IV of its causes of action against all defendants, jointly and severally, states and alleges as follows:

143.     CVS incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 142 hereof, inclusive.

144.     Defendants had knowledge of material facts which CVS did not have and which CVS could not have discovered by the exercise of reasonable diligence as detailed above and reiterated in summary here including:

       a.     That defendants never disclosed the prior, pending and threatened litigation, most involving fraudulent misrepresentations and omissions by defendants, resulting in significant liabilities;

       b.     That defendants used the investment funds for purposes other than the Legacy Hutto project;

c. That defendants lacked the financial resources to conduct the Perfect Game Project and to pay CVS's investment and guaranteed return;

d. That there was litigation concluded, pending and threatened that adversely affected defendants' ability to complete the transaction and provide CVS with the return it was promised;

e. That there were adjudicated liabilities of defendants that were not disclosed that adversely affected the defendants' ability to complete the transaction and provide CVS with the return it was promised.

145. Defendants were under an obligation to communicate those material facts to CVS.

146. Defendants intentionally failed to communicate those material facts to CVS.

147. CVS justifiably relied upon defendants to communicate such material facts to it.

148. As a result of defendants' failure to communicate those material facts, CVS has been damaged in the principal amount of One Million Fifty Thousand Dollars ($1,050,000), with interest from and after February 11, 2020 at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of May 2, 2022, and continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00).

149. Defendants acted in a fraudulent, willful, wanton and malicious manner toward CVS.

**WHEREFORE**, for Count IV, CVS respectfully prays for judgment against all defendants, jointly and severally, for its actual damages in the principal amount of One Million Fifty Thousand Dollars ($1,050,000), with interest from and after February 11, 2020 at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five

Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of May 2, 2022, and

continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00); for punitive

damages in an amount that will punish defendants and will deter them and others from engaging

in similar conduct; for the costs of this action; and for such other and further relief as to this

Honorable Court seem meet and just.

### Count V
### Breach of Contract - $250,000 Note

**COMES NOW** CVS**,** by and through its attorneys, and for Count V of its causes of

action against defendants Lowe and Legacy Hutto, jointly and severally, states and alleges as

follows:

150.    CVS incorporates by this reference as if fully set forth in this Count each and all

of the allegations contained in paragraphs 1 through 149 hereof, inclusive.

151.    A contract existed between CVS, Lowe and Legacy Hutto as described, which

had sufficient consideration to support it.

152.    CVS has performed in compliance with said contract.

153.    Lowe and Legacy Hutto have breached their obligations and duties under its

contract as described herein.

154.    As a direct result of said breaches, CVS has been damaged in the principal

amount of Two Hundred Fifty Thousand Dollars ($250,000), with interest from and after

February 11, 2020 at the rate of twelve percent (12%) per annum, which totals Sixty-Six

Thousand Seven Hundred Fifty Dollars ($66,750.00) as of May 2, 2022, and continues to accrue

at the per diem rate of Eighty-Three and 33/100 Dollars ($83.33), and its legal fees and expenses.

**WHEREFORE**, for Count V, CVS respectfully prays for judgment against defendants

Lowe and Legacy Hutto, jointly and severally, for its actual damages in the principal amount of

Two Hundred Fifty Thousand Dollars ($250,000), with interest from and after February 11, 2020 at the rate of twelve percent (12%) per annum, which totals Sixty-Six Thousand Seven Hundred Fifty Dollars ($66,750.00) as of May 2, 2022, and continues to accrue at the per diem rate of Eighty-Three and 33/100 Dollars ($83.33); for its legal fees and expenses; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

### Count VI
### Breach of Contract - $800,000 Note

**COMES NOW** CVS**,** by and through its attorneys, and for Count VI of its causes of action against defendants Lowe and Legacy Hutto, jointly and severally, states and alleges as follows:

155.    CVS incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 154 hereof, inclusive.

156.    A contract existed between CVS, Lowe and Legacy Hutto as described, which had sufficient consideration to support it.

157.    CVS has performed in compliance with said contract.

158.    Lowe and Legacy Hutto have breached their obligations and duties under its contract as described herein.

159.    As a direct result of said breaches, CVS has been damaged in the principal amount of Eight Hundred Thousand Dollars ($800,000), with interest from and after February 28, 2020 at the rate of twelve percent (12%) per annum, which totals Two Hundred Nine Thousand Sixty-Six and 67/100 Dollars ($209,066.67) as of May 2, 2022, and continues to accrue at the per diem rate of Two Hundred Sixty-Six and 67/100 Dollars ($266.67), and its legal fees and expenses.

**WHEREFORE**, for Count VI, CVS respectfully prays for judgment against defendants Lowe and Legacy Hutto, jointly and severally, for its actual damages in the principal amount of Eight Hundred Thousand Dollars ($800,000), with interest from and after February 28, 2020 at the rate of twelve percent (12%) per annum, which totals Two Hundred Nine Thousand Sixty-Six and 67/100 Dollars ($209,066.67) as of May 2, 2022, and continues to accrue at the per diem rate of Two Hundred Sixty-Six and 67/100 Dollars ($266.67); for its legal fees and expenses; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

### Count VII
### Breach of Contract - PSA

**COMES NOW** CVS**,** by and through its attorneys, and for Count VII of its causes of action against defendants Lowe and Legacy Hutto, jointly and severally, states and alleges as follows:

160.    CVS incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 159 hereof, inclusive.

161.    A contract existed between CVS, Lowe and Legacy Hutto as described, which had sufficient consideration to support it.

162.    CVS has performed in compliance with said contract.

163.    Lowe and Legacy Hutto have breached their obligations and duties under its contract as described herein.

164.    As a direct result of said breaches, CVS has been damaged in the principal amount of One Million Fifty Thousand Dollars ($1,050,000), with interest from and after February 11, 2020 at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of

43

May 2, 2022, and continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00), and its legal fees and expenses.

**WHEREFORE**, for Count VII, CVS respectfully prays for judgment against defendants Lowe and Legacy Hutto, jointly and severally, for its actual damages in principal amount of One Million Fifty Thousand Dollars ($1,050,000), with interest from and after February 11, 2020 at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of May 2, 2022, and continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00); for its legal fees and expenses; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

**Count VIII**
**<u>Breach of Implied Duty of Good Faith and Fair Dealing</u>**

**COMES NOW** CVS**,** by and through its attorneys, and for Count VIII of its causes of action against defendants Lowe and Legacy Hutto, jointly and severally, states and alleges as follows:

165.    CVS incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 164 hereof, inclusive.

166.    Lowe and Legacy Hutto have breached their implied duties of good faith and fair dealing as described herein.

167.    As a direct result of Lowe's and Legacy Hutto's breaches, CVS has been damaged in the principal amount of One Million Fifty Thousand Dollars ($1,050,000), with interest from and after February 11, 2020 at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five Thousand Eight Hundred Sixteen and 67/100 Dollars

($275,816.67) as of May 2, 2022, and continues to accrue at the per diem rate of Three Hundred

Fifty Dollars ($350.00).

**WHEREFORE**, for Count VII, CVS respectfully prays for judgment against defendants

Lowe and Legacy Hutto, jointly and severally, for its actual damages in the principal amount of

One Million Fifty Thousand Dollars ($1,050,000), with interest from and after February 11, 2020

at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five

Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of May 2, 2022, and

continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00); for the costs

of this action; and for such other and further relief as to this Honorable Court seem meet and just.

### Count IX
### Quantum Meruit

**COMES NOW** CVS**,** by and through its attorneys, and for Count IX of its causes of

action against all defendants, jointly and severally, states and alleges as follows:

168.    CVS incorporates by this reference as if fully set forth in this Count each and all

of the allegations contained in paragraphs 1 through 167 hereof, inclusive.

169.    CVS made an investment at the special instance of the defendants.

170.    Defendants promised to repay the investment with a return of twelve percent

(12%).

171.    Defendants are indebted to CVS in the principal amount of One Million Fifty

Thousand Dollars ($1,050,000), with a return on investment from and after February 11, 2020 at

the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five

Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of May 2, 2022, and

continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00).

172.    Despite CVS's demands, defendants have failed and refused to pay the fair and reasonable value thereof.

**WHEREFORE**, for Count IX, CVS respectfully prays for judgment against all defendants, jointly and severally, for its actual damages in the principal amount of One Million Fifty Thousand Dollars ($1,050,000), with a return on investment from and after February 11, 2020 at the contract rate of twelve percent (12%) per annum, which totals Two Hundred Seventy-Five Thousand Eight Hundred Sixteen and 67/100 Dollars ($275,816.67) as of May 2, 2022, and continues to accrue at the per diem rate of Three Hundred Fifty Dollars ($350.00); for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, CVS hereby makes its demand for a trial by jury of all claims in this action triable to a jury.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to D. Kan. Rule 40.2, CVS hereby requests that the trial of this case be held in U.S. Courthouse located at U. S. Courthouse, 500 State Avenue, Kansas City, Kansas   66101.

**MURPHY LAW**

By _____

**MARK D. MURPHY, KS** #13129
mmurphy@mlf-llc.com
6640 West 143rd Street, Suite 250
Overland Park, Kansas   66223
(913) 600-7913
Fax (913) 600-7823

Attorneys for Plaintiff CVS Hutto LLC

46

## **VERIFICATION**

**STATE OF NEBRASKA**                    )
                                                           ) ss.
**COUNTY OF DOUGLAS**               )

    **Gangadasu Reddy** being of lawful age, and first duly sworn upon oath, states that he is a Member of CVS Hutto LLC, the plaintiff in this action, that he has read the foregoing complaint and knows the contents thereof, and that all statements therein made are true.

_____
**Gangadasu Reddy**

Subscribed and sworn to before me this 3 day of May 2022.

_____
Notary Public

My Commission Expires:

9|5|2023

GENERAL NOTARY - State of Nebraska
ALEXANDRA J DAWSON
My Comm. Exp. September 5, 2023

47